# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN RUCKMAN,<br>    Plaintiff,<br><br>v.<br><br>C/O JOHN LAKAS, et al.,<br>    Defendants. | Civil Action No. 2:17-cv-0384<br><br>United States Magistrate Judge<br>Cynthia Reed Eddy |

## MEMORANDUM OPINION AND ORDER[1]

Presently pending is Defendants' Partial Motion to Dismiss Plaintiff's Second Amended Complaint, with brief in support. (ECF Nos. 28 and 29). Plaintiff has filed a response and brief in opposition. (ECF Nos. 31 and 32). For the reasons that follow, the motion will be granted in part and denied in part.

The events giving rise to this lawsuit occurred while Plaintiff was a pretrial detainee incarcerated at the Beaver County Jail; specifically during the time Plaintiff was housed in the RHU section of the Beaver County Jail from May - August, 2016.

In his Second Amended Complaint, Plaintiff details a series of alleged ongoing acts of misconduct by the defendant correctional officers, which conduct seems to have commenced after Plaintiff filed grievances against C/O Hunter and C/O Simpson, neither of whom are named defendants in this lawsuit. According to the Second Amended Complaint, after filing these two grievances, the defendant correctional officers began almost daily harassing and threatening

---

[1] The parties have consented to jurisdiction before a United States Magistrate Judge; therefore, the Court has the authority to decide dispositive motions, and to eventually enter final judgment. See 28 U.S.C. § 636, et seq. See ECF Nos. 23, 25.

Plaintiff with bodily harm, which culminated in an incident on July 10, 2016, when Plaintiff was assaulted by a number of the defendants, including being punched in the back of the head, and tasered approximately six or seven times. Plaintiff also alleges, *inter alia*, that the correctional officers tampered with his breakfast tray, searched his cell daily for about 25 days in a row, subjected him to strip searches (which he alleges were done for the sole purpose of humiliating and degrading him), misappropriated his property, denied his requests for medical attention, inappropriately placed him in a "medical restraint chair" for two hours, and did not permit him to attend his disciplinary hearing in which he was found guilty in absentia.

During his time in the RHU, Plaintiff filed 12 grievances and 20 requests slips concerning the violations of his rights. He alleges that he sent requests slips to both the Warden and Deputy Warden to inform them "of what [he] was experiencing," but that the only request which the Deputy Warden responded to pertained to Plaintiff's food tampering allegations.

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 420-21 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleadings requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

Plaintiff brings his claims under 42 U.S.C. § 1983 for violations of his First, Fourth, Fifth, Eighth, and Fourteenth rights. The claims will be discussed seriatim.

It is difficult to discern from the Second Amended Complaint what conduct by the Defendants is being alleged to have violated Plaintiff's First Amendment rights. However, the Second Amended Complaint seems to indicate that the correctional officers' actions were, at least in part, retaliatory based on Plaintiff's filing of two grievances. *See* Second Amended Complaint, at 11 ("Upon arrival I did file 2 grievances. One on C/O Hunter and one on C/O Simpson. I then began to be harassed by C/O Laskas and C/O Rosenstill.") For this reason, Defendants' request to dismiss Plaintiff's First Amendment claims will be denied. Defendants will have the ability to flush out in discovery the details of Plaintiff's First Amendment claims.

Defendants also argue that Plaintiff's claims under the Fourth Amendment should be dismiss. At this early stage of the litigation, the Court disagrees with Defendants and finds that the claims should proceed. The United States Court of Appeals for the Third Circuit has held that the Fourth Amendment applies to strip searches in the prison setting. *Parkell v. Danberg,* 833 F.3d 313, 325 (3d Cir. 2016) (holding that the Fourth Amendment "grants inmates a limited right of bodily privacy, subject to reason intrusions necessitated by the prison setting"). An excessive force claim arising from a strip search may also implicate the Eighth Amendment. *See Jordan v. Cicci,* 428 F. App'x 195, 199-200 (3d Cir. 2011). To recover under either amendment, the prisoner must establish that the strip search was unreasonable. *Payton v. Vaughn*, 798 F. Supp. 258, 261-62 (E.D. Pa. 1992). The test for ascertaining the reasonableness of a search "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). In applying this balancing test, the Court "must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id*. *See also*

3

*Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 621 F.3d 296, 309-11 (3d Cir. 2010), *aff'd,* -- U.S., 132 S.Ct. 1510, 1516-17 (2012).

As to Plaintiff's claims about the impropriety of the searches of his cell, the Supreme Court has held that prisoners do not have a legitimate expectation of privacy in their prison cells, and therefore, the Fourth Amendment's protections are unavailable to prisoners, *Hudson v. Palmer*, 468 U.S. 517, 539 (1984). However, the Court in *Hudson* emphasized that a prisoner may nonetheless have other remedies, including the Eighth Amendment's protection against "cruel and unusual punishments," if a prison guard in searching the prisoner's cell amounts to "calculated harassment unrelated to prison needs." *Id.* (prison officials cannot "ride roughshod over inmates' property rights with impunity").

Defendants' motion to dismiss these claims will be denied because these claims cannot be resolved on the pleadings, but rather must await a summary judgment motion. Both claims focus on factual matters relating to the Defendants' actions and intent. The Court is bound by the well-pleaded facts of the Second Amended Complaint at this stage of the proceedings. Therefore, the procedural posture of this case, which comes before the Court on a motion to dismiss, simply does not permit definitive judgments on the legal and factual inquiry which lies at the heart of Plaintiff's claims regarding the searches of his body and cell.

Next, in his Second Amended Complaint, Plaintiff mentions the Fifth Amendment. The Fifth Amendment provides in full that:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject to the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a

witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

None of the provisions of the Fifth Amendment appears to be implicated by Plaintiff's Second Amended Complaint, except for the due process provision. However, the Fifth Amendment's due process clause only protects against federal government action. All the defendants in this matter are alleged to be employees of Beaver County / Beaver County Jail. As such, the defendants are not federal actors and the Fifth Amendment is not applicable. Accordingly, Plaintiff's Fifth Amendment claims will be dismissed for failure to state a claim.

As to Plaintiff's Eighth Amendment claims, because he was a pretrial detainee, his claims must be premised on the Fourteenth Amendment as "his Eighth Amendment protection from cruel and unusual punishment [had] not attached." *Vargo ex rel. Vargo v. Plum Borough*, 376 F. App'x 212, 215 (3d Cir. 2010) (citing *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 668 (3d Cir. 1988)). Nevertheless, the Supreme Court of the United States has instructed that "the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner[.]'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). Thus, Plaintiff's claims will be evaluated under the Eighth Amendment standard. *King v. Cnty. of Gloucester*, 302 F. App'x 92, 97 (3d Cir. 2008).

And last, Defendants seek to have Plaintiff's claims against the Warden and the Deputy Warden dismissed for lack of personal involvement. They assert that their only involvement stems from reviewing and responding to Plaintiff's grievances. Plaintiff responds that he filed numerous grievances and requests slips indicating that he was being subjected to ongoing

5

constitutional violations, and Defendants failed to adequately investigate his complaints. These allegations are sufficient to defeat a motion to dismiss. *See Whitehead v. Rozum*, 2012 WL 4378193, at *2 (W.D.Pa. Aug. 7, 2012) ("In the prison setting, where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a situation he can remedy directed."), *report and recommendation adopted by* 2012 WL 4370929 (W.D.Pa. Sept. 24, 2012). Of course, discovery will likely reveal the extent to which Defendants had actual knowledge of Plaintiff's alleged constitutional violations. At this stage, however, the Court must assume that Plaintiff's grievances and requests to staff were sufficient to make the Warden and Deputy Warden aware of his allegations that he was being subjected to ongoing constitutional violations.

In conclusion, Defendants' motion will be granted in part and Plaintiff's claims under the Fifth Amendment will be dismissed. In all other respects, the motion is denied. An appropriate order follows.

## ORDER OF COURT

AND NOW, this 15th day of December, 2017, Defendants' Partial Motion to Dismiss (ECF No. 28) is GRANTED IN PART AND DENIED IN PART. Plaintiff's claims brought under the Fifth Amendment are dismissed. The motion is denied in all other respects.

In accordance with F.R.Civ.P. 12(a)(4)(A), Defendants shall file a responsive pleading by **January 5, 2018.**

BY THE COURT:

s/Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: JOHN RUCKMAN
MR1912
SCI-Greene
175 Progress Drive
Waynesburg, PA 15370
(via U.S. First Class mail)

All counsel of record via ECF electronic notification